UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| CHERILYNN BARNHILL, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 18-CV-2308 |
| ) | |
| U-HAUL COMPANY OF ILLINOIS, INC., ) | |
| ) | |
| Defendant. ) | |

### ORDER

Plaintiff, Cherilynn Barnhill, filed a Complaint (#1) against Defendant, U-Haul Company of Illinois, Inc., on December 6, 2018, alleging Defendant violated her civil rights under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e) and the Illinois Human Rights Act (775 Ill. Comp. Stat. 5/2-101(A)) (IHRA), by discriminating against her due to her pregnancy and on the basis of her race and gender.  On January 14, 2019, Defendant filed a Motion to Dismiss, or in the Alternative Stay, Proceedings and Compel Arbitration (#12).  Plaintiff filed her Response (#14) on January 28, 2019.  For the following reasons, Defendant's motion (#12) is GRANTED.  This case will be STAYED pending arbitration.

### BACKGROUND

The following background is taken from the allegations in Plaintiff's Complaint (#1).  At this stage of the proceedings, the court must accept as true all material allegations of the Complaint, drawing all reasonable inferences therefrom in Plaintiff's favor.  See *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016).

Plaintiff, an African-American woman, began working for Defendant at its Champaign, Illinois, store as a customer service representative in June 2014.  In June 2015, the assistant general manager of the Champaign store, William Zanelli, used a racial slur towards Plaintiff, which she reported to Defendant's management.  In February 2016, Plaintiff was promoted to assistant general manager of the store.  Plaintiff was the only female assistant general manager in the region.

In May 2016 Plaintiff informed Aaron Freeman, the president of Defendant's marketing department, that she had become pregnant.  After Plaintiff advised Freeman that she had become pregnant, Freeman told other employees to watch Plaintiff because "[Plaintiff] was pregnant" and Plaintiff "always did too much around the store."  On May 30, 2016, after she had advised Freeman of her pregnancy, Plaintiff was demoted back to customer service representative.  Plaintiff was told that her demotion was due to her pregnancy.  Plaintiff also alleges that she was demoted due to being in a protected class (race and gender).  On August 19, 2016, Plaintiff was discharged from Defendant's employ.

Plaintiff's Complaint contains five counts.  Count I alleges pregnancy discrimination under the Pregnancy Discrimination Act of 1978 amendment to Title VII.  Count II alleges pregnancy discrimination under the IHRA.  Count III alleges racial discrimination under Title VII.  Count IV alleges gender discrimination under Title VII.  Count V alleges retaliation under Title VII.

Defendant has moved to compel arbitration and dismiss Plaintiff's Complaint, or in the alternative, asks the court to compel arbitration and stay the case pending the outcome of the compelled arbitration.  Defendant attached to its motion the affidavit of

Enemencio Garcia III, a business analyst in Defendant's human resources department. Among Garcia's job responsibilities is overseeing Defendant's online employment application system. He is the authorized custodian of Defendant's employment records, including that of Plaintiff. Garcia averred that Plaintiff applied for employment with Defendant on June 16, 2014, was hired effective June 23, 2014, and was terminated from employment on August 9, 2016. Garcia then went on to describe the online employment application process. Garcia averred that Plaintiff properly signed and completed the online forms in the application process. Garcia averred that, in June 2014, Defendant required all new hires, including Plaintiff, to agree to Defendant's arbitration policy as a condition of employment and to indicate their assent to the arbitration agreement by affixing their electronic signature to the document. Garcia averred that, on June 23, 2014, Plaintiff submitted the arbitration agreement to Defendant with her electronic signature attached.

Defendant attached as Exhibit B to its motion a copy of the arbitration agreement signed by Plaintiff. Plaintiff printed her name and signed the agreement electronically, dating the agreement (June 23, 2014) and providing her Social Security number. The arbitration agreement applies to all disputes involving Defendant's employees arising out of or relating to employment with Defendant, including (but not limited to) claims for wrongful termination, employment discrimination, and harassment or retaliation under Title VII.

Defendant argues that Plaintiff signed the arbitration agreement, and that the agreement requires that all claims relating to or arising out of her employment or termination of employment with Defendant are subject to final and binding arbitration.

Defendant argues that the arbitration agreement is valid and enforceable, and that arbitration should be compelled and the case dismissed. In the alternative, Defendant argues that the case must be stayed pending the completion of the arbitration process.

Plaintiff, in her Response, does not contest Defendant's assertion that she signed the arbitration agreement, and that the agreement is valid and binding, and would cover the claims she raised in her Complaint. Thus, Plaintiff has conceded that the arbitration agreement is valid, binding, and enforceable. See *Lacy v. Progessive Insurance Co.*, 2016 WL 25717, at *2 (N.D. Ill. Jan. 4, 2016), citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court. We apply that rule where a party fails to develop arguments related to a discrete issue, and we also apply that rule where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss." (citations omitted)); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466-67 (7th Cir. 2010) ("Failure to respond to an argument—as the Bontes have done here—results in waiver....This leaves us no choice but to accept U.S. Bank's assertions—supported as they are by pertinent legal authority—that the allegations in the Bontes' complaint do not entitle them to relief.").

Rather, Plaintiff's only contention in response is that Defendant has waived the right to compel arbitration due to its substantial delay in requesting Plaintiff arbitrate the dispute. Plaintiff argues that she filed her charge of discrimination with the Equal Employment Opportunity Commission (EEOC)/Illinois Department of Human Rights (IDHR) (the court will hereafter simply refer to the proceedings as "EEOC proceedings" for simplicity's sake) back on March 14, 2017, and Defendant did not raise the

arbitration issue until the instant motion on January 14, 2019, a delay of nearly two years. Plaintiff claims this delay is inconsistent with Defendant's stated intent to arbitrate, and also that the delay has prejudiced her.

## ANALYSIS

"The Federal Arbitration Act ("FAA") [9 U.S.C. § 1 et seq.] was originally enacted 'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.'" *Kawasaki Heavy Industries, Ltd. v. Bombardier Recreational Products, Inc.*, 660 F.3d 988, 994 (7th Cir. 2011), quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). "In furtherance of this goal, the FAA 'provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, § 3, and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement, § 4.'" *Kawasaki*, 660 F.3d at 994, quoting *Gilmer*, 500 U.S. at 25; 9 U.S.C. §§ 3-4. The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

However, despite this federal policy favoring arbitration, a contractual right to arbitration can be waived, either explicitly or inferentially from a party's actions. *Kawasaki*, 660 F.3d at 994. Here, there is nothing in Plaintiff's response, or the documents on file with the court, to indicate that Defendant expressly waived its right to arbitrate. Therefore, the analysis will focus on whether waiver of its right to arbitrate can be inferred from Defendant's actions.

For waiver of the right to arbitrate to be inferred, the court must determine that, considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate. *Kawasaki*, 660 F.3d at 994. Several factors are considered in the waiver analysis, such as: (1) the allegedly defaulting party's diligence or the lack thereof; (2) whether the allegedly defaulting party participated in litigation; (3) whether the allegedly defaulting party substantially delayed its request for arbitration; or (4) whether the allegedly defaulting party participated in discovery. *Kawasaki*, 660 F.3d at 994. Though the Seventh Circuit does not require a showing of prejudice to find waiver, it is a relevant factor in the totality of the circumstances analysis. *Kawasaki*, 660 F.3d at 994. Of all the factors, however, "diligence or the lack thereof" is particularly important. *Smith v. GC Services*, 907 F.3d 495, 499 (7th Cir. 2018); *Kawasaki*, 660 F.3d at 994. The court asks itself did "'the party seeking arbitration ... do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?'" *Smith*, 907 F.3d at 499, quoting *Cabinetree of Wisconsin, Inc. v. Kraftmade Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995). A party's choice to proceed in a judicial forum creates a rebuttable presumption that the party has waived its right to demand arbitration, however simply responding to litigation actions by the other party or filing a motion to dismiss that does not seek a resolution of the dispute does not necessarily amount to a choice to litigate. *Kawasaki*, 660 F.3d at 995-96. Finally, because of the strong federal policy favoring arbitration, "parties asserting waiver bear a 'heavy burden' and courts should not 'lightly infer' waiver." *St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products Co., Inc.*, 969 F.2d 585, 590 (7th Cir. 1992).

In this case, Plaintiff filed her Complaint (#1) on December 6, 2018, and the executed summons indicates that Defendant was served on December 11, 2018. On December 17, 2018, Defendant appeared and demanded a trial by jury. A little over a month later, without filing an answer, Defendant filed the instant motion seeking to compel arbitration and dismiss or stay the case. Defendant has not participated in discovery, has not participated in litigation in any meaningful way, and, at 33 days since being served, has not "substantially delayed its request for arbitration" in any meaningful way.

Under such circumstances, courts have found that a party has not acted inconsistently with the intent to arbitrate, and thus has not waived arbitration. See *United Ironworkers, Inc. v. Travelers Property Casualty Co. of America*, 2019 WL 77334, at *7 (S.D. Ill. Jan. 2, 2019) (no waiver where the defendant, who removed the case from state court to federal court, did not engage in discovery, had taken no other steps beyond removal to litigate the case in federal court, and had responded to the plaintiff's complaint with a motion to compel arbitration three months after the complaint's filing); *Martinez v. Utilimap Corp.*, 2015 WL 3932151, at *9-10 (S.D. Ill. June 25, 2015) (even though the defendant waited until a year after the case was filed to assert its right to compel arbitration and had already filed a motion to dismiss for failure to state a claim, the court found no waiver because clerical errors at the defendant's business contributed to the delay, the defendant's participation in a scheduling conference was prior to its discovery of the clerical error, the defendant only deposed one plaintiff and received one set of produced documents prior to its discovery of the clerical error, and no party was prejudiced); *Hoenig v. Karl Knauz Motors, Inc.*, 983 F.Supp.2d 952, 965-66

(N.D. Ill. 2013) (no waiver found where there was a three month delay between the filing of the complaint and the defendant's motion to compel arbitration, because the defendant sought to invoke its right to arbitrate just one month after it filed its answer, defendant raised the right to arbitrate in the "incipient" stages of the discovery process before any substantive motions had been filed or substantive rulings had been made, and the defendant received no discovery that it would not be entitled to in arbitration proceedings under the arbitration agreement).

By contrast, in cases where waiver was found, the party seeking to compel arbitration had engendered a much longer delay before seeking their rights to compel arbitration and/or much more thoroughly participated in the litigation process than Defendant has in this case.  See *Hoenig*, 983 F.Supp.2d at 965-66 citing the following collected cases:  *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 754 (7th Cir. 2002) (finding waiver where defendant fully participated in bankruptcy adversary proceedings and only sought arbitration after the confirmation of plaintiff's Chapter 11 plan of reorganization); *Cabinetree*, 50 F.3d at 389 (finding waiver where ten months of litigation, including removal to federal court, extensive discovery, and the setting of a trial date, had passed before defendant sought arbitration); *St. Mary's*, 969 F.2d at 587 (finding waiver where ten months of litigation, including defendant's filing of a motion to dismiss or for summary judgment, had passed before defendant raised the issue of arbitration); *Corbett v. DRH Cambridge Homes, Inc.*, 2005 WL 1838456, at *1 (N.D. Ill. July 26, 2005) (finding waiver where defendant failed to raise the issue of arbitration as an affirmative defense and sought arbitration eleven months after the complaint was filed and eight months after it filed its answer).

In a recent Seventh Circuit case addressing this issue, *Smith v. GC Services*, the delay was much more substantial than the one month delay at issue here. In *Smith*, the defendant waited until eight months after the plaintiff had filed suit to privately demand arbitration, waited a further five months beyond that before filing a motion to compel arbitration, and had already filed a merits-based motion to dismiss. *Smith*, 907 F.3d at 500. Further, the court found the plaintiff had suffered prejudice because the motion to compel was filed *after* the plaintiff had already defeated a motion to dismiss, obtained class certification, and litigated several discovery issues. *Smith*, 907 F.3d at 501.

Here, by contrast, Defendant's delay was less than minimal. Defendant filed the motion seeking to compel arbitration 33 days after being served with Plaintiff's Complaint; Defendant has filed no substantive motions and the court has issued no substantive ruling; and Defendant has filed no answer nor engaged in any discovery. Thus, Plaintiff has suffered no prejudice from the one month delay between the filing of her Complaint and Defendant's instant motion.

Plaintiff bases the entirety of her waiver argument on the idea that, instead of the waiver clock beginning to tick on December 6, 2018, when she initiated this federal court litigation, the waiver clock actually started back in March 2017, when she filed her EEOC charge of discrimination and Defendant participated in the administrative process with that agency. Thus, Plaintiff argues, Defendant delayed the request to arbitrate "for a period of years" and elected to participate in the EEOC investigation initiated by Plaintiff "for a year and half prior to attempting to enforce the alleged arbitration agreement." Plaintiff argues she has been prejudiced because she "spent

nearly 18 months pursuing the matter before the EEOC, and not once did the Defendant raise the issue of mandatory arbitration as a defense[,]" causing Plaintiff "the expense of litigating in court[.]"

The problem with Plaintiff's argument is that she was engaged in an administrative proceeding in the EEOC, not "litigation" as envisioned by the courts with respect to the waiver analysis. None of the cases cited by Plaintiff where the courts found waiver based on delay involved an EEOC hearing, but rather all involved a delay in seeking arbitration *after litigation had been initiated in court*. See *Ernst & Young*, 304 F.3d at 754; *Cabinetree*, 50 F.3d at 389; *St. Mary's*, 969 F.2d at 587; *Corbett*, 2005 WL 1838456, at *1. None of the cases cited involved proceedings in a administrative body like the EEOC, but rather all involved a significant delay in seeking arbitration after the initiation of *actual* litigation in an *actual* court. Perhaps the closest Plaintiff comes with her argument is the bankruptcy proceedings in *Ernst & Young*, but, even then, bankruptcy litigation is actual, adversarial litigation and bankruptcy courts are genuine federal courts where cases are presented to federal bankruptcy judges.

Further, this court could not find any cases where the court began counting the delay period for waiver from the time a plaintiff initiated proceedings in an administrative body as opposed to an actual judicial body. he court finds Chief Judge Castillo's opinion in *Hoenig* to be informative. In *Hoenig*, the plaintiff worked as an administrator for the defendant car dealership from 2004 to 2011, and part of her employment included an agreement to arbitrate. In August 2010, the plaintiff filed a charge of discrimination with the EEOC alleging discrimination by the defendant. The arbitration agreement was provided to the EEOC along with the rest of the plaintiff's

personnel file as part of the party's proceedings before that body. But the case is silent as to whether the defendant sought to compel arbitration at that time or used it as any sort of argument before the EEOC. The plaintiff alleged she continued to be discriminated against by the defendant and was retaliated against for her filing the EEOC complaint. Because of this, the plaintiff filed another EEOC complaint in May 2011 alleging retaliation. The EEOC issued the plaintiff a right to sue letter in November 2012, and the plaintiff filed suit in federal court in February 2013. The defendant filed its answer on April 5, 2013, agreed to some initial scheduling on April 8, 2013, and began discovery on April 11, 2013. On May 9, 2013, the defendant moved to compel arbitration and to dismiss or stay the case.

The plaintiff argued that, despite the defendant's knowledge of the arbitration agreement's existence, the defendant filed an answer and affirmative defenses, issued a Rule 68 offer of judgment, co-produced and filed a joint status report, and participated in initial discovery before seeking arbitration. The plaintiff asserted that this amount of litigation activity amounted to a lack of diligence and was inconsistent with an intent to arbitrate, and thus constituted waiver. The court rejected this argument, focusing on the minimal delay between the initiation of the federal court lawsuit and the demand for arbitration. *Hoenig*, 983 F.Supp.2d at 965-66. Nowhere in the opinion did the court reference the EEOC proceedings in calculating how long the defendant had waited in seeking to compel arbitration. The EEOC proceedings, and whether the defendant did or did not attempt to compel arbitration there, were a total non-factor in the court's discussion of waiver and appear to have been completely irrelevant to the court's analysis of the issue. Indeed, Chief Judge Castillo stated that "[i]n cases where courts

11

have found waiver based on or based in part on delay, however, the delay between the *initiation of the suit* and the party's pursuit of arbitration has been much greater than the three-month delay here and buttressed by more substantial participation in litigation proceedings[,]" indicating that, in the context of waiver, the court's contemplate the delay clock as starting once litigation is initiated in *court*.  *Hoenig*, 983 F.Supp.2d at 965 (emphasis added).  See also *Jung v. Skadden, Arps, Slate, Meagher, & Flom, LLP*, 434 F.Supp.2d 211 (S.D.N.Y. 2006); *Sarbak v. Citigroup Global Markets, Inc.*, 354 F.Supp.2d 531 (D.N.J. 2004).[1]

In addition, the language used by the Seventh Circuit indicates that, when courts are contemplating delay for waiver of arbitration purposes, the courts should be concerned with the time starting from the initiation of *judicial proceedings*.  See, *e.g.*, *Smith*, 907 F.3d at 499, quoting *Cabinetree*, 50 F.3d at 391 (the court asks itself did "'the party seeking arbitration ... do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed *judicially* or by arbitration?'")

---

[1]There is also a question as to what effect, if any, a request by Defendant to compel arbitration would have had on the EEOC proceedings.  In *Gilmer*, a case where the plaintiff sued his employer under the Age Discrimination in Employment Act (ADEA) and the employer sought to compel arbitration, the U.S. Supreme Court wrote: "[w]e also are unpersuaded by the argument that arbitration will undermine the role of the EEOC in enforcing the ADEA. An individual ADEA claimant subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action. Indeed, Gilmer filed a charge with the EEOC in this case."  *Gilmer*, 500 U.S. at 28.  The Court went on to note that "[f]inally, the mere involvement of an administrative agency in the enforcement of a statute is not sufficient to preclude arbitration."  *Gilmer*, 500 U.S. at 28-29.  This was the basis for the district court's holding in *Sarbak* that "Plaintiff's Right–to–Sue letter, obtained through the EEOC's investigation of her charge, does not constitute litigation on the merits for waiver purposes."  *Sarbak*, 354 F.Supp.2d at 542.

(emphasis added); *Kawasaki*, 660 F.3d at 995 ("[w]e have held that when a party chooses to proceed in a *judicial forum*, there is a rebuttable presumption that the party has waived its right to arbitrate.") (emphasis added).

Thus, for the above reasons, the court finds that the waiver clock did not start until Plaintiff initiated this lawsuit in December 2018, and that the totality of the circumstances do not indicate that Defendant waived its right to arbitrate.

*Whether to Stay the Case or Dismiss*

"The Seventh Circuit has repeatedly held that when arbitration is appropriate in the trial court's district, the proper course of action is to stay the proceedings rather than to dismiss them outright." *Hoenig*, 983 F.Supp.2d at 961, citing *Tice v. American Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002). Where an arbitration agreement does not identify a specific arbitral forum, arbitration is appropriate in the trial court's district. *Hoenig*, 983 F.Supp.2d at 961. Here, the arbitration agreement does not identify a specific arbitral forum, so arbitration is appropriate in this district, and, therefore, a stay, rather than a dismissal, is the most appropriate course of action. See *Hoenig*, 983 F.Supp.2d at 961.

IT IS THEREFORE ORDERED:

(1) Motion to Dismiss, or in the Alternative Stay, Proceedings and Compel Arbitration (#12) is GRANTED.

(2) This case is hereby STAYED until arbitration has been had in accordance with the terms of the arbitration agreement attached as Exhibit B to Defendant's motion (#12). The parties are hereby COMPELLED to resort to arbitration.

(3)  The parties are ordered to file a status report in September 2019, and every March and September thereafter until the arbitration is complete, and to file a final status report within 30 days of the completion of the arbitration. ENTERED this 2nd day of May, 2019.

                           s/ COLIN S. BRUCE
                           U.S. DISTRICT JUDGE